UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| TRANSVOLT, INC.<br><br>*Plaintiff*<br><br>*v.*<br><br>THE UNITED STATES,<br><br>*Defendant* | Court No. 25-00582 |

# COMPLAINT

Plaintiff Transvolt, Inc, for its complaint against Defendant United States does hereby state and allege as follows:

## CAUSE OF ACTION

1. This action is commenced to challenge the denial of plaintiff's protest which contested the exclusion from entry into the United States of certain golf carts, manufactured in and imported from Vietnam.

## JURISDICTION

2. This Court has exclusive jurisdiction of this action pursuant to 28 U.S.C. § 1581(a).

3. All requisite duties, taxes, and fees were paid or deposited prior to the commencement of this action.

## PARTIES

4. Plaintiff Transvolt Inc. is a corporation organized and existing under the laws of the State of Delaware. It is an importer and wholesaler of electric and other vehicles, including the golf carts which are the subject of this action.

5. Defendant the United States is the Federal defendant. The actions complained of in this case were taken by its agency United States Customs and Border Protection, which is organized within the Department of Homeland Security.

## STATEMENT OF FACTS

6. On various dates in September and October, 2025, Transvolt Inc. caused the golf carts which are the subject of this action to be imported at the Port of Los Angeles/Long Beach, California under cover of the consumption entries identified in the Summons to this action.

7. The golf carts, in their condition as imported, are incomplete "rolling chassis", which lack tires, a roof and a battery. These are to be added to the golf carts after importation.

8. The golf carts covered by this action were imported under cover of the Los Angeles/Long Beach consumption entries identified in the Summons in this action. They are representative of golf carts imported by the plaintiff under cover numerous other consumption entries which have also been detained by CBP and whose detention has been protested.

9. On various dates, CBP issued Notice of Detention for these and other shipments of incomplete golf carts. The detention notices variously stated the reasons for detention as

being "Statutes/regulations violated: 49 C.F.R. 571.500", "Detained pursuant to 19 U.S.C. §1499(c)", "Remarks – Under DOT/NHTSA" and "Under Import Specialist Review for possible NHTSA violations".

10. The National Highway Traffic Safety Administration (NHTSA), an office within the Department of Transportation, issues safety standards, primarily for on-road vehicles. 49 C.F.R. §571.500 is the agency's standard for "Low Speed Vehicles" (LSP).

11. By Customs Form 0651D Notice of Detention dated October 3, 2025, CBP advised Transvolt's Customhouse broker that certain entries of merchandise were being detained pending a determination of admissibility pursuant to 19 U.S.C. §1499, indicating that the goods were being held pending a check of compliance with National Highway Traffic Safety Association (NHTSA) requirements.

12. By electronic mail message to Transvolt's broker dated October 15, 2025, CBP indicated that various golf carts imported by Transvolt were being denied entry:

U.S. Department of Transportation (DOT) National highway Traffic Safety Administration (NHTSA) determined the electric golf carts are ineligible for import under 49 USC § 30112(a)(1). These vehicles do not have a valid VIN and does [sic] not fully meet FMVSS No. 500. 49 USC § 30112(a)(1) requires that all vehicles being imported to the United States must meet all applicable FMVSS and be certified as meeting those FMVSS. In addition, the DOT HS-7 declaration filing lacked a substantiating statement as required under 49 CFR 591.6(a).

Please file CBP form 7512 and booking confirmation for re-export to country of origin.

13. By letter dated October 20, 2025, Transvolt, through counsel, submitted to the CBP officer who had advised Transvolt that its golf carts were being denied entry a letter and exhibits [Complaint Exhibit A] explaining, in detail that golf carts are not considered "low speed vehicles" and are not subject to FMVSS 50.

3

14. The NHTSA's regulation, 49 C.F.R. §471.3, which is the best evidence of its contents, defines a "low speed vehicle" as follows:

> **Low-speed vehicle (LSV)** means a motor vehicle,
>
> (1) That is 4-wheeled,
>
> (2) Whose speed attainable in 1.6 km (1 mile) is more than 32 kilometers per hour (20 miles per hour) and not more than 40 kilometers per hour (25 miles per hour) on a paved level surface, and
>
> (3) Whose GVWR is less than 1,361 kilograms (3,000 pounds).

15. Plaintiff's golf carts in question do not meet the definition of LSVs because they are not designed to attain the speeds identified in the standard.

16. Federal Motor Vehicle Safety Standard 50, at 49 C.F.R. §571.500 S2, which regulation is the best evidence of its contents, provides in part that:

> *Purpose.* The purpose of this standard is to ensure that low-speed vehicles **operated on the public streets, roads, and highways** are equipped with the minimum motor vehicle equipment appropriate for motor vehicle safety.

17. Transvolt's golf carts are not intended to be "operated on the public streets and highways". They are designed purely for off-road use on golf courses, parks, estates, resorts and similar off-road environments.

18. Part 565 of the NHTSA Regulations [49 C.F.R. Part 565] governs Vehicle Identification Number (VIN) requirements. Specifically 49 C.F.R. §565.2(a), which is the best evidence of its contents, provides:

> **565.2 Application.**
>
> (1) Except as provided in paragraph (a)(2) of this section, subpart B of this part 565 applies to passenger cars, multipurpose passenger vehicles, trucks, buses, trailers

(including trailer kits), incomplete vehicles, low speed vehicles, and motorcycles manufactured on or after October 27, 2008 whose VINs have a letter "A" or "B" in the 10th position, and to passenger cars, multipurpose passenger vehicles, trucks, buses, trailers (including trailer kits), incomplete vehicles, low speed vehicles, and motorcycles manufactured on or after April 30, 2009. Vehicles imported into the United States under 49 CFR 591.5(f), other than by the corporation responsible for the assembly of that vehicle or a subsidiary of such a corporation, are excluded from requirements of §§ 565.13(b), 565.13(c), 565.13(g), 565.13(h), 565.14 and 565.15.

19. The Vehicle Identification Number (VIN) requirement in NHTSA's regulations applies to passenger cars, multifunction passenger vehicles, trucks, buses, trailers (including trailer kits), incomplete vehicles, low speed vehicles, and motorcycles". It emphatically does not include off-road vehicles, including golf carts.

20. That VIN requirements do not apply to unmodified golf carts was officially acknowledged by NHTSA in its published opinion Zozloski_1635, where the agency's chief counsel stated:

> I note that, **in establishing FMVSS No. 500, NHTSA explained that the agency did not intend to regulate golf carts with a maximum speed capability of 20 mph or lower (63 Federal Register 33209; June 17, 1998**; enclosed). The agency has determined that conventional golf carts (those with a maximum speed capacity of 20 mph and lower) are not motor vehicles for the purpose of our regulations. [1] The primary purpose of a conventional golf cart is not for operation on public roads, beyond that of an incidental nature. Therefore, they are not included in the definition of "motor vehicle."
>
> **Because conventional golf carts are not motor vehicles, they are not subject to any FMVSS as originally manufactured. Therefore, a conventional golf cart cannot be taken out of compliance with an FMVSS, because none apply. As such, the "make inoperative" provision does not apply.**
>
> The act of modifying a golf cart for use on the public roads would, however, create a motor vehicle to which new-vehicle FMVSSs would become applicable at the time of the modification. For purposes of compliance with NHTSAs regulations, we would regard the modifier as the manufacturer. As a motor vehicle manufacturer, the modifier would be responsible for certifying that the vehicle

5

   conformed to all applicable safety standards. These would vary depending on whether the vehicle was an LSV or some other type of motor vehicle.

[Emphasis added]. See https://www.nhtsa.gov/interpretations/zozloski1635 (last accessed December 22, 2025).

21. On November 17, 2025, plaintiff, through counsel, submitted to Customs a Memorandum of Points and Authorities, providing a detailed explanation of why golf carts do not require a VIN number and are not subject to FMVSS 50 [Complaint Exhibit B].

22. After plaintiff's protest was filed, Customs officials indicated to plaintiff's representatives that the true reasons for the detentions of plaintiff's golf carts was an investigation of possible transshipment from Vietnam of golf carts, for the purpose of evading duties which had been imposed on Chinese-origin golf carts and electrical vehicles under Section 301 of the Trade Act of 1974, Section 232 of the Trade Expansion Act of 1962, the International Emergency Economic Powers Act (IEEPA) and antidumping and countervailing duty orders issued against Chinese-origin low-speed vehicles, including golf carts, under Title VII of the Tariff Act of 1930, as amended.

23. Thereafter on November 25, 2025, plaintiff submitted a Supplemental Memorandum of Points and Authorities in Support of its protest [Complaint Exhibit C], setting out extensive evidence concerning the manufacture of plaintiff's golf carts in Vietnam.

24. Plaintiff's Supplemental Memorandum of Points and Authorities was supported by a sworn Affidavit of Jianxing Su, the President of Baike Vehicles Vietnam, the plant where the subject golf carts undergo final assembly. Mr. Su testified that the Baike Vehicles building

occupied an area of 37,500 square meters with a building interior size of 25,000 square meters. Mr. Su testified that the plant employs 382 Vietnamese workers, who work in the following manufacturing departments:

- ➢ Welding;
- ➢ Painting;
- ➢ Motor assembly;
- ➢ Rear axle assembly;
- ➢ Final assembly;
- ➢ Inspection; and
- ➢ Packaging

Mr. Su testified that the assembly time for each golf cart was approximately 4 hours.

25. Plaintiff's Supplemental Memorandum and Exhibits listed the many types of production equipment installed at the Vietnamese factory

26. Mr. Su's Affidavit further indicated that "In addition, we obtained Certificates of Origin and Value-Addition Records demonstrating that value-added operations performed in Vietnam account for 41% of the cost of the golf carts, and that key components—including the chassis—are wholly sourced in Vietnam". See Complaint Exhibit D.

27. Mr. Su also provided hundreds of pages of documentary Exhibits establishing that plaintiff's subject golf carts are manufactured in Vietnam:

Exhibit A: Vietnam Production and Compliance Overview

Exhibit B: Vietnam Factory Lease Agreement – Building C

Exhibit C: Vietnam Factory Lease Agreement – Building D

7

Exhibit D: Declaration Form for Export Goods Meeting "LVC" Criteria (41% Vietnam Value)

Exhibit E: Vietnam Certificate of Origin for Chassis (covering all shipments; matches U.S. import records)

Exhibit F: Vietnam Employee Social Insurance Records

Exhibit G: Employee Payroll Records

Exhibit H: Vietnam Customs On-Site Inspection Record

Exhibit I: Photographs of Chassis Production

Exhibit J: Chassis Purchase Orders for All Shipments (covering all shipments; matches U.S. import records)

Exhibit K: Vietnam Export Processing Enterprise (EPE) Certificate, confirming continuous customs supervision and real-time factory monitoring accessible to Vietnam Customs

Exhibit L: Chassis Supply Agreements

Exhibit M: Environmental Certificates

These documents are available at the first link set out in Complaint Exhibit C.

28  Plaintiff's Supplemental Memorandum. Complaint Exhibit C, also contained links to three (3) YouTube Video presentations depicting operations in the Vietnam facilities manufacturing the imported golf carts. These videos showed:

Video depicting speed test (golf cart did not reach 20 miles per hour);

Video depicting Baike Vehicles Vietnam factory and operations therein;

Video depicting assembly of golf cart frames in supplier factory in Vietnam.

28. On December 8, 2025, Customs denied plaintiff's protest against exclusion of the golf carts involved in this action and subject to Los Angeles/Long Beach Protest 2704-25174032. The December 8 notice of denial stated:

> Protest Denied - Due to lack of supporting documentation to support speed limit; nor does intended end use dictate street compatibility. Furthermore, no documentation including invoices, photos, etc. support the country of origin as Vietnam.

29. On December 12, 2025, Customs denied plaintiff's additional protest 2704-25174032 against deemed exclusion of its golf carts, stating:

> Based on NHTSA's assessment dated 10/17/25 the TEKO Trophy vehicles are ineligible for import.

30. Evidently, Customs disregarded the documentary and photographic evidence which plaintiff submitted in support of its exclusion protests.

31. On December 15, 2025, plaintiff timely initiated this action by filing a Summons contesting the denial of its protest. This Court has exclusive subject matter jurisdiction over this action pursuant to 28 U.S.C. §1581(a).

## COUNT I.

32. Paragraphs 1 through 31 are incorporated by reference as though fully set out herein.

33. The products, in their condition as imported consist, of unfinished golf carts, complete but for tires, a battery and a roof, all of which are intended to be installed after importation.

34. As golf carts, the vehicles are intended use in off-road environments, such as golf courses, parks, industrial installations, school campuses and the like. The golf carts are not intended for, and in most jurisdictions are not legal for, use on highways, streets and public thoroughfares.

35. The golf carts' motors feature speed controllers which limit the golf carts to operation at speeds of less than 20 miles per hour.

36. The golf carts do not meet the National Highway Traffic Safety Administration (NHTSA) standards for classification as "low speed vehicles".

37. The golf carts are not subject to Federal Motor Vehicle Safety Standard 50, and are not required to be marked with a Vehicle Identification Number.

38. NHTSA has never suggested to plaintiff that its golf carts are subject to FMVSS 50, or that the golf carts are inadmissible into the United States unless brought into conformity with that standard.

39. On information and belief, the NHTSA has never advised Customs and Border Protection that plaintiff's golf carts are subject to FMVSS 50, or must be in compliance with that standard as a condition for admission into the United States.

40. Customs erred, as a matter of fact and law, by excluding the golf carts from the United States based on a failure to conform to FMVSS.

## COUNT II

41. Paragraphs 1 through 40 are incorporated by reference as though fully set forth herein.

42. The golf carts are products of Vietnam, as demonstrated by extensive documentation and video evidence presented to CBP in support of plaintiff's exclusion protest.

43. A good originates, for tariff and country of origin marking purposes, in the last country where it underwent a "substantial transformation" prior to being imported into the United States. If an imported article undergoes a "substantial transformation" after importation into the United States, it is no longer considered a foreign product and need not be marked

to show a foreign country of origin. See *United States v. GibsonThomsen* Co., 27 C.C.P.A. 267 (1940)

44. The concept of "substantial transformation" is taken from the United States Supreme Court's decision in *Anheuser-Busch Brewing Assn. v. United States*, 207 U.S. 556 (1908), which concerned the question of whether goods had been "manufactured" into new and different articles for purposes of the duty drawback statute. The Court noted:

> Manufacture implies a change, but every change is not manufacture, and yet every change in an article is the result of treatment, labor and manipulation. But something more is necessary, as set forth and illustrated in *Hartranft v. Wiegmann,* 121 U.S. 609. There must be transformation; a new and different article must emerge, "having a distinctive name, character or use." 207 U.S. at 562. (Emphasis added).

45. The "substantial transformation" standard has been codified in Customs' own origin regulations. Section 134.1(b) of the Customs Regulations, 19 U.S.C. §134.1(b), provides:

> (b) Country of origin. "Country of origin" means the country of manufacture, production, or growth of any article of foreign origin entering the United States. Further work or material added to an article in another country must effect a substantial transformation in order to render such other country the "country of origin" within the meaning of this part; however, for a good of a NAFTA country, the NAFTA Marking Rules will determine the country of origin.

46. Courts render "substantial transformation" determinations on a fact-specific, case-by-case basis. A change in name is generally considered the least persuasive factor in determining whether a substantial transformation has taken place (see *National Juice Products Assn. v. United States*, 10 C.I.T. 48 (1986)); however, only a change in one of the three specified criteria — name, character or use — is required to establish a "substantial transformation." See *Koru North America v. United States*, 12 C.I.T. 1120 (1988).

47. Customs has indicated that the "substantial transformation" test of a change in name, character or use is the origin test used to determine whether an article is a "Product of

China" for 5 purposes of application of Section 301 retaliatory tariffs. See, e.g., *Customs Headquarters Ruling H304539 of April 20, 2020; Customs Headquarters Ruling H305503 of February 20, 2020.*

48. Most recently, Customs has ruled that golf carts, assembled in Vietnam by processes substantially identical to those used by plaintiff, are products of Vietnam for tariff purposes. See *New York Customs Ruling N355050 of November 18, 2025.*

49. Examining the requirements of the "substantial transformation" test, it is clear that the operations performed in Vietnam effected a "substantial transformation in the creation of plaintiff's imported golf carts:

    **Change in Name** – a variety of components were combined to create a "golf cart" or a "rolling chassis", a distinct article of commerce with a name different that its components or materials.

    **Change in Character** – a number of "producer's goods" – piece parts, fit only for use in manufacture, became a vehicle, a "consumer good", nearly ready for use, with only tires and a roof to be added;

    **Change in Use** – the finished golf cart is a personal transportation device, something for which none of the components could be used.

50. Customs erred, as a matter of fact and law, in excluding plaintiff's merchandise from entry into the United States on the basis of a finding that Vietnam was not the country of origin.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiff prays that this Court enter judgement in its favor, and direct the Port Director of Customs at Los Angeles/Long Beach, California to release the subject merchandise to plaintiff; and to award plaintiff such further and additional relief as

this Court may deem just, including but not limited to, storage charges, compensation for economic loss, attorney's fees and court costs.

                Respectfully submitted,

NEVILLE PETERSON LLP
Counsel for Plaintiff Transvolt Inc.
One Exchange Plaza at 55 Broadway
New York, New York 10006
(212) 635-2730
(212) 635-0113 (Fax)
(646) 287-8461 (Cell)

By:    /s/ John M. Peterson
        John M. Peterson
        Richard F. O'Neill
        Patrick B. Klein
        Sanzida Talukder

December 22, 2025